UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

UNITED STATES OF AMERICA

v.                                                    CRIMINAL ACTION NO. 5:21-cr-00197

ANDREW ALLEN ARNOLD

<u>**MEMORANDUM OPINION AND ORDER**</u>

Pending is Defendant Andrew Arnold's objection to the draft Presentence Investigation Report ("Report" or "PSR"), submitted to the Probation Office and preserved within the April 16, 2022 Addendum to the Report. Mr. Arnold is scheduled for sentencing on August 17, 2022. For the foregoing reasons, the Court **OVERRULES** Mr. Arnold's objection and **FINDS** that a four-level enhancement under Section 2K2.1(b)(6)(B) of the United States Sentencing Guidelines is appropriate.

**I.**

On Thursday, February 7, 2019, Lindsey Glover -- Mr. Arnold's then-girlfriend -- picked up Mr. Arnold from work in Covington, Virginia. [Doc. 48 at 8:15–25].[1] Mr. Arnold had been let go temporarily from his job for failing a drug test. [*Id*. at 9:7–8]. Upon being picked up by Ms. Glover, Mr. Arnold began accusing her of cheating on him, making pornographic videos, and "working with people that were after him." [*Id*. at 9:8–10, 15–17]. He then forced Ms. Glover to perform sexual acts with him in the car in a KFC parking lot, after which Ms. Glover drove to

---

[1]     Ms. Glover admittedly had a "buzz" while the events of this day unfolded. [Doc. 48 at 15:1–4].

Humpback Bridge and then a family property in Hematite, Virginia. [*Id.* at 9:10-13, 11:4–5]. While at the family property, Ms. Glover continued to deny the accusations made by Mr. Arnold. [*Id.* at 9:19–20]. High on drugs and angered by Ms. Glover's denials, Mr. Arnold produced a gun while they were outside of the vehicle, which he fired "away from [Ms. Glover] across the creek." [*Id.* at 9:20–22, 11:6–10].

After this initial shot, Ms. Glover and Mr. Arnold got back into the car to leave the family property "before . . . any more trouble happened." [*Id.* at 9:23–25]. They then stopped in Whitesville, where the altercation continued. [*Id.* at 10:2–3]. During this stop, Mr. Arnold made several threats to kill Ms. Glover and himself. [*Id.* at 10:3–5]. Mr. Arnold again fired the gun in Ms. Glover's presence but outside of the vehicle. [*Id.* at 11:17–12:12]. Ms. Glover states that this shot was made inches from her head but that the gun was not pointed directly at her. [*Id.* at 11:23–12:8].

Ms. Glover and Mr. Arnold then got in the car again because Ms. Glover, fearful of the threats Mr. Arnold was making, "wanted to get to town closer to people." [*Id.* at 12:17–18]. Ms. Glover was driving the vehicle down a "one-lane paved road . . . [with] spots that [we]re smooth and spots that ha[d] a little bump." [*Id.* at 21:21–22:2]. While on a smooth portion of that road, Mr. Arnold again shot the gun, this time from the passenger seat inside the vehicle. [*Id.* at 12:20–23, 18:5–11]. The shot was made "within inches of [Ms. Glover's] face" and "in front of [her] . . . [o]ut the [driver] window." [*Id.* at 12:20–13:3, 18:20–22, 20:12–15].

Ms. Glover continued driving, eventually arriving at a Little General Store gas station in White Sulphur Springs, where she asked the gas station attendant to call the police. [*Id.* at 13:4–15]. She then hid in the bathroom while she awaited the police's arrival, with Mr. Arnold

2

"banging on the bathroom door." [*Id.* at 13:12–21]. Once police arrived, Mr. Arnold was arrested with the gun in his possession, at which time he admitted that the gun's serial number had been obliterated. [Doc. 40 at 3]. Upon searching the car, the responding officer on scene found three empty shell casings in the passenger side door where Mr. Arnold had been riding. [*Id.*].

On January 21, 2022, Mr. Arnold pled guilty to Possession of a Firearm by a Prohibited Person, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). [Doc. 26]. The probation officer prepared a draft presentence investigation report ("PSR"), to which Mr. Arnold lodged multiple objections. The Court convened for sentencing on May 13, 2022. [Doc. 35]. Mr. Arnold, at that time, objected to many of the factual statements made by Ms. Glover as well as the four-level enhancement for the possession of a firearm in connection with another felony offense. Ms. Glover was not made available for examination at this hearing, and, with pivotal facts still in dispute, the Court continued the sentencing hearing so that a full factual record could be developed. [Doc. 36].

On June 15, 2022, the Court reconvened for sentencing. [Doc. 38]. Ms. Glover was made available for examination, but Mr. Arnold admitted that her factual allegations were accurate, apparently obviating the need for her testimony. Mr. Arnold, however, persisted in his objection that, under such facts, he did not commit the felony offense of wanton endangerment under *West Virginia Code* § 61-7-12 and that the proposed four-level enhancement was inappropriate. Noting the sharp factual and legal dispute, the Court continued sentencing to permit briefing. [Doc. 39]. The briefing period has since concluded. [Docs. 40, 41].

The Court again convened on July 22, 2022 for sentencing. [Doc. 46]. At the hearing, the United States called Ms. Glover to testify. After her testimony concluded, the Court

continued the sentencing proceeding. The Court asked that a transcript of the hearing be prepared and that the parties file any additional supplemental briefing on the issue of the four-point enhancement in light of Ms. Glover's testimony. Sentencing is rescheduled for August 18, 2022. [Doc. 51]. The matter is now ready for adjudication.

## II.

Section 2K2.1(b)(6)(B) of the Sentencing Guidelines provides, in pertinent part, "[i]f the defendant . . . used or possessed any firearm or ammunition in connection with another felony offense . . . increase by 4 levels." U.S.S.G. § 2K2.1(b)(6)(B). According to the commentary to the Guidelines, this subsection applies "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense or another offense, respectively." *Id.* at appl. n.14(A). "'Another felony offense,' for purposes of subsection (b)(6)(B), means any federal, state, or local offense . . . punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction maintained." *Id.* at appl. n.14(C).

In this case, the "[other] felony offense" for which the probation officer determined Section 2K2.1(b)(6)(B) applied is wanton endangerment involving a firearm in violation of W. Va. Code § 61-7-12, which states as follows:

> Any person who wantonly performs any act with a firearm which creates a substantial risk of death or serious bodily injury to another shall be guilty of a felony, and, upon conviction thereof, shall be confined in the penitentiary for a definite term of years of not less than one year nor more than five years . . . .

## III.

The Court must determine whether Mr. Arnold committed the offense of wanton

4

endangerment with a firearm, in violation of W. Va. Code § 61-7-12. If Mr. Arnold committed that offense, he is subject to a four-level sentencing enhancement pursuant to U.S.S.G. § 2K2.1(b)(6)(B).

To prove wanton endangerment with a firearm, it must be established that "(1) the defendant (2) did wantonly perform (3) with a firearm (4) an act (5) creating substantial risk of (6) death or serious bodily injury to another." *State v. Wright*, 200 W.Va. 549, 553, 490 S.E.2d 636, 640 (1997). Discharge of a firearm is not an element of wanton endangerment. *State v. Hulbert*, 209 W. Va. 217, 228, 544 S.E.2d 919, 930 (2001). Further, the firearm need not be loaded to constitute wanton endangerment. *See United States v. Laudermilt*, 576 F. App'x 177, 182 (4th Cir. 2014) (applying the pertinent four-level enhancement because "the offense [of wanton endangerment involving a firearm] is complete when one person wantonly points a firearm at another person, regardless whether the firearm is loaded"); *United States v. Sumpter*, No. 2:15-00067, 2016 WL 398223, at *2 (S.D. W. Va. Jan. 6, 2016) ("The Fourth Circuit, recognizing this broad interpretation of West Virginia's wanton endangerment statute, observed that the Supreme Court of Appeals citation to *Key* suggests that the offense of wanton endangerment with a firearm in West Virginia is complete when an individual points a firearm at another, regardless of whether the firearm is loaded."); *Key v. Commonwealth*, 840 S.W.2d 827, 829 (Ky. Ct. App. 1992) (holding that a firearm need not be loaded to constitute wanton endangerment).

Typical cases of wanton endangerment involve the pointing or discharge of a firearm toward a person or a place where a person might be. *See, e.g.*, *Laudermilt*, 576 Fed. App'x at 182 (applying the pertinent four-level enhancement because "indications are strong from the highest court of West Virginia that the offense [of wanton endangerment involving a firearm] is

complete when one person wantonly points a firearm at another person"); *Sumpter*, 2016 WL 398223, at *2 ("The Fourth Circuit . . . observed that . . . the offense of wanton endangerment with a firearm in West Virginia is complete when an individual points a firearm at another . . . ."); *State v. Collins*, No. 19-0633, 2020 WL 5269836, at *5 (W. Va. Sept. 4, 2020) (memorandum decision) (upholding sixteen convictions for wanton endangerment based on evidence that defendant fired sixteen shots into a home inhabited by others, although no person was shot directly); *Key*, 840 S.W.2d at 828 (determining that the defendant committed a similar offense to that of West Virginia's wanton endangerment when he "pointed the gun within 1 1/2 to 2 feet from [victim]'s face, and asked him, 'Do you want some of this?'," then "fired the gun twice near [victim]'s feet"); *compare Al-Saud v. State*, 658 N.E.2d 907, 910 (Ind. 1995) (affirming conviction for "an act that creates a substantial risk of bodily injury to anther person . . . committed while armed with a deadly weapon" where defendant pointed an unloaded gun at others because "[t]he brandishing of a firearm in a congested area or during a dispute can create a variety of risks of bodily injury to others regardless of whether the weapon is loaded"), *with Elliot v. State*, 560 N.E.2d 1266 (Ind. Ct. App. 1990) (reversing conviction for criminal recklessness where defendant fired five pistol shots over uninhabited fields and woodlands bordering his business when his employees were present but no one was in his line of fire or in adjacent field and no evidence was presented that anyone was in the woods).

   Despite the typical cases of wanton endangerment, the statutory language covers a broad swath of conduct -- prohibiting one from "wantonly perform[ing] *any act* with a firearm which creates a substantial risk of death or serious bodily injury." W. Va. Code § 61-7-12 (emphasis added). Additionally, "[t]he Supreme Court of Appeals of West Virginia has interpreted

the "act" element broadly." *Sumpter*, 2016 WL 398223, at *2. Judge Copenhaver has also opined -- albeit, in a different context[2] -- that, "[f]or example, pointing an unloaded firearm or allowing a child unsupervised access to a firearm would both constitute an 'act' involving a firearm for purposes of the wanton endangerment statute." *Id.* at *3. Further, "the Supreme Court of Appeals suggested that brandishing a firearm, which is a misdemeanor under W. Va. Code. § 61-7-11 and may be treated as a lesser included offense of wanton endangerment, may also constitute the 'act' required for wanton endangerment." *Id.* at *2 (citing *State v. Bell*, 211 W. Va. 308, 312, 565 S.E.2d 430, 434 (2002)).

Our Court of Appeals' precedent confirms the broad nature of wanton endangerment. For example, in *United States v. Daniel*, the Court determined that the defendant committed wanton endangerment when -- in an angry and drunken state -- he fired his rifle into the air of a residential neighborhood. *See* 18 F. App'x 58, 60 (4th Cir. 2001). The defendant's act of "firing a rifle in a densely populated residential area at 2:00 o'clock in the afternoon" led the district court to conclude that he had created a substantial risk of death or serious bodily injury. *Id.* The Fourth Circuit, noting that the case presented a "close question," affirmed, reasoning that "a gun being fired by a person in this condition [of intoxication and anger] presents a substantial risk of death or serious bodily injury to his close neighbors." *Id.*

Similarly, in *State v. Hulbert*, the West Virginia Supreme Court of Appeals upheld the defendant's conviction of wanton endangerment involving a firearm when he followed his significant other into the pantry during a domestic violence altercation and, among other acts,

---

[2]     The issue being analyzed by Judge Copenhaver was whether wanton endangerment was a crime of violence for purposes of a career offender enhancement.

"showed [her] a 7 millimeter rifle . . . and threatened to kill both [her] and her children." 209 W. Va. at 220, 544 S.E.2d at 922. While the issue on appeal was whether the defendant's wanton endangerment conviction should be overturned because the State failed to prove the rifle was ever discharged, the lower court determined that such conduct was enough for wanton endangerment, and the Supreme Court of Appeals did not disagree. *Id.* at 228, 544 S.E.2d at 930.

Mr. Arnold's actions in firing a gun out the open driver's side window in front of Ms. Glover's face while she was driving was a wantonly performed act with a firearm that created a substantial risk of death or serious bodily injury to Ms. Glover. As in *Daniels*, Mr. Arnold was impaired and under the influence. [Doc. 48 at 9:18–19 (Ms. Glover testifying that on February 7, 2019, Mr. Arnold "was so high that he couldn't see anything but what he wanted to see")]. And even though Mr. Arnold was not in a heavily populated area when he fired the gun, he was in a moving vehicle where a bump in the road, oncoming traffic, or any other number of factors would almost certainly have changed the bullet trajectory; this is especially so given Mr. Arnold's impaired state. Further, the sound from the discharge of the firearm could have startled Ms. Glover into crashing the vehicle and causing death or serious injury to herself and those among potential oncoming traffic. If one can commit wanton endangerment by drunkenly discharging a firearm into the air of a populated area, one just as easily commits it when discharging a firearm inches in front of a person's face while in a moving vehicle.

Based upon the foregoing, and finding Ms. Glover's testimony entirely credible given the clarity and detail of her presentation and the absence of any motive to falsify or embellish her account, the Court **FINDS** by a preponderance of the evidence that Mr. Arnold violated *West Virginia Code* § 61-7-12. Thus, the Court **OVERRULES** Mr. Arnold's objection.

**IV.**

Based on the foregoing, the Court **FINDS** that a four-level sentencing enhancement pursuant to U.S.S.G. § 2K2.1(b)(6)(B) is appropriate.

The Clerk is directed to send a copy of this Order to the Defendant and his counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER:        August 17, 2022

Frank W. Volk
United States District Judge

9